19-3573 United States v. Fita Spann Mr. Mercer, we'll hear from you first Thank you, your honor. My name is David Mercer and I represent the appellant Fita Spann in this case. This appeal presents a purely legal question of what I believe to be first impression and that question is whether the revocation of a term of conditional release pursuant to 18 U.S.C. 4246 F must be premised in whole or in substantial part on the defendant's present mental health. Stated differently, must a court revoking a term of conditional release make findings as to the defendant's present mental health based on expert mental health opinion? This issue was brought to surface in Fita Spann's case. Mr. Spann was committed civilly pursuant to 18 U.S.C. 4246 on June 6 of 2001. In March of 2015, he was conditionally released and the last mental health evaluation addressing his dangerousness as that concept is used and defined under the federal mental health statutes. His last evaluation was in May of 2014. In September of 2019, the district court revoked his conditional release and expressly overruled a motion seeking an independent mental health evaluation of Mr. Spann. The district court revoked Mr. Spann's conditional release without considering his present mental health and whether his present mental health state caused him to be dangerous. Revocations of conditional release for a civilly committed person are controlled by 4246 F. And this statute essentially requires two findings by a district court. The first finding is that the defendant who has previously been conditionally released failed to comply with the mental health regimen prescribed as a part of his or her conditional release. The second finding, and this is where the statutory language becomes very important, is whether in light of that failure to abide by conditional release, quote, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another, close quote. The district court's analyses of this factor, it inherently involves the defendant's present mental state. And I believe that it necessitates an evaluation by a mental health expert in order for the court to make the proper finding that the term of conditional release should be revoked. And there's two different... Do you mean in every case a revocation hearing requires a mental health examination or a report? I believe that it does, Your Honor, because I think that's what the statute requires. And I think this will be a theme that runs throughout this argument, but we may as well talk about it at the beginning. Mental health is fluid. It is not a constant. And I think that is envisioned by the mental health scheme that we're talking about today, and specifically 4246 contemplates that there may be people who recover from their mental illness to the point that they are no longer committable. And if that does in fact happen, there is a provision under 4246 that would allow for them to be released from custody, released from conditional release, and turned back into the community unconditionally. So I think the statute itself recognizes that a person's condition is an ongoing issue that requires monitoring. But you haven't invoked those provisions as I understand it. Yes, Your Honor. This is the answer I would have for you is that by seeking to revoke a person's term of conditional release, they are automatically invoked. They are automatically part of the decision that a district court has to make. And so to put it in different terms, I believe that if the district court is going to revoke a term of conditional release, they have to make a finding that the person violated the conditions of release and that they remain dangerous as that is defined by the controlling statutory language. That's why in the brief, I put so much emphasis on the identity that exists in the statutory language to commit somebody and the exact same language being used in the matrix of revoking somebody's conditional release. There is a tremendous statutory identity between committing somebody initially and then revoking their term of conditional release if they're conditionally released down the road. I think the statutory questions are very, very similar because they use virtually identical language. So to answer the court's question, if a person is conditionally released, that is because they have had at some point a mental illness. But they've recovered to the point where their conditional release is advisable and can be done safely. But if the court's going to revoke that, it makes an issue again whether they remain committable. Why doesn't it just take us back to the status quo ante, which was you've been found to be mentally ill and dangerous and the only way you can be released is on these conditions. But if the conditions no longer apply, you're back to the status quo ante. And if you think that you've recovered, you have a mechanism under 4246E, the ones you mentioned earlier, 4247H to pursue release. Why isn't that a way to read the statute? I know the government has argued in its brief that the relief that's available under 4247H is a reason to not read the statute the way I'm asking the court to read it. 4247H empowers a person who's been committed civilly to file a motion through either their guardian or counsel to have the court reexamine whether they remain committable. The concern I have with that is that using that to read the statute for less than I believe it actually says is contrary to the statutory language, and it impermissibly shifts the burden to the defendant to show that he's no longer committable. I guess the way of saying it is if a government is going to maintain custody and jurisdiction and authority over a person pursuant to the federal statutes, they have an ongoing responsibility to show that that person remains committable. And the existence of a collateral remedy under 4247H is not a reason to interpret 4246F for less than it actually is. Counsel, let me ask it if I could a slightly different way. Under 4246F, the district court was required to make a risk assessment. And my question is, as part of that risk assessment, do they consider the mental state of Spaulding? Your Honor, I would disagree with you. Under 4246F, if a person is going to be revoked, if their conditional release is going to be revoked, as it currently stands, they are not doing a new risk assessment. And that was one of the reasons that I felt like Mr. Spann's case called out for appellate relief was because the last risk assessment that dealt with the issue of dangerousness was more than five years ago. Okay, maybe I'm not asking the question in the right way. What I was referring to was when they have to decide whether to revoke the conditional release. I think they have to make a risk assessment as to whether their continued release would be a danger. When they make that determination, do they consider the mental state of the person? And if so, at what point are they considered? I think I understand now the court's question. In order to revoke somebody under subsection F, there has to be a finding as to dangerousness because it uses the exact same statutory language that's used to define dangerousness in the initial commitment. And this is where one of my grave concerns arises, is that as it currently stands, the district court is not requiring a finding of present mental health or mental illness, excuse me, that causes the person to be dangerous. Rather than that, the court is making a dangerousness conclusion based on compliance with the regimen of treatment or whether the person has otherwise complied with the conditions of release. Because of that, my concern is that the district court's reading of this statute has now gone from a very narrow question that I think the court is asking about, and that is, is the person mentally ill and that causes them to be dangerous? Now we're asking a question that is greatly broadened and completely unhitched from the narrow question of dangerousness under the initial commitment statute. And because we are no longer asking the question, is this person presently mentally ill and does that cause them to be dangerous? The revocation proceedings are now greatly expanded in their scope and potentially could be completely unlinked from the defendant's mental illness. Judge Grunder, I see that you're muted. Oh, sorry. Isn't the whole purpose of a conditional release that the person is being released only because by following these conditions, they won't be a danger? I think that's accurate. I think that there's a two-phase process here. One is that they have made sufficient progress in the treatment of their mental illness that they could safely be released back into the community. Only if they follow the conditions. Yes, I believe that's exactly right. You mentioned before that this would improperly shift the burden. This is a civil commitment. What's the problem with shifting the burden? Well, that's a very interesting question. I think the answer I would give the court is this, that for Mr. Spann, for Peter Spann, whether this is a civil or criminal case is a matter of a distinction without a difference. He's in the Bureau of Prisons. He's spending his days next to people who are serving criminal sentences. It's a deprivation of liberty. I think it would be improper for a person who has had their liberty taken away by the government's actions to have the burden of proving that they're not susceptible to that deprivation of liberty. That's where the due process implications become, I think, very acute is that for all intents and purposes, a civil commitment is a prison sentence. The days are spent in the same place with the same amenities, with the same lack of amenities. Of course, when it's first committed, the government has the burden of proving that. That is true. They have the burden of proving by clearing convincing evidence that this person is mentally ill and that causes them to be dangerous. Because of the fluidity of mental illness, and especially with somebody like Mr. Spann, who has not been examined for five years, we don't have a clear sense of what his present is. He would no longer meet the commitment criteria under 4246. I'd like to save a bit of time for rebuttal, but I would answer any questions the court has. Who has the burden in a discharge petition? I believe the defendant does, Your Honor. It's under 4246E, I believe. Do you think that's unconstitutional? Well, I think that having a finding that the person is mentally ill and dangerous, I can see how society would want that to be in place until the defendant proves otherwise. I think the difference here, though, is that there's already a finding that they are amenable to release into the community, and we are once again depriving them of the liberty interest they have in conditional release. I would like to save at least a minute and a half for rebuttal. You may. Thank you for your argument. Thank you. Ms. Hyde, we'll hear from you. Thank you, Your Honor. Can you hear me? Yes. Thank you. May it please the court, my name is Cindy Hyde, and I'm appearing today for the United States. Mr. Spann argues that revocation proceedings under 4246F inherently require a mental health evaluation each time that the revocation hearing is held in order to determine if he continues to meet the criteria for commitment. The United States disagrees. The issue here is not Spann's mental health or whether he remains committable. It's his failure to abide by the specific conditions of his release. Mr. Spann was lawfully committed under 4246 in 2001. He's been conditionally released several times, the most recent in 2015, and it's important to note that the reason that that was his most when he goes back to the prison, he goes back into the system, and the statutory scheme starts again. In this case, Mr. Spann was conditionally released with conditions that required him to live in a halfway house or a residential facility in Howe, Oklahoma. The facility notified the parole officer that Spann would not comply with the conditions, so he lost his placement in that facility. He said the rules didn't apply to him. He was smoking in his room and near the staff vehicles, and he had bullied the lower functioning residents. As a result of this conduct, he was returned to the medical center for a revocation hearing. At this point, the question before the court is not whether Spann remained committable under 4246. The question is whether his conditional release should be revoked because he failed to comply with the conditions of release. Counselor, let me ask you a question. I think it's clear that from a practical matter, there is an alternate proceeding that could be used if he wants an independent examination, but what matters to me is the statute, and what does the statute say? I think that's what I have to go by. 4246F requires that there be a risk assessment made that's related to, quote, continued release, and those are the words I want to focus on. Why don't those words implicate present mental state if the court is required to make its risk assessment related to continued release? At the time that the conditions are revoked, your honor, the court has to find two things. He has to find that the inmate, Mr. Spann, did not abide by the conditions of release, which in this case, he clearly didn't, and then the court has to find that as a result, he's presently still dangerous to others or the property of others, and in this case, it's inherent in the fact that Mr. Spann wasn't living by the conditions that he was required to uphold. Right, but what I'm asking is the assessment that has to be made is that this relates to his continued release, so why would you look back to whether he was dangerous five years ago rather than presently? I think that this goes back to Judge Colleton's comment that the person goes back into the system, so once Mr. Spann is back in the facility, they look at him again, they get him back on his medication, and then they assess him again and find whether or not he can try to be conditionally released again. As I'm sure you know in this record, he's already been released three times, and in fact, is eligible to be released again if we can find state placement. So why doesn't the statute just require the court to determine whether he violated the conditions rather than as to continued release? Well, I think that if you look at it in the entire scheme of things, you have to look at these statutes altogether, and it wouldn't be possible for us to instantly evaluate whether or not Mr. Spann should be immediately released again, and having a person come, an independent mental exam doesn't advance the argument at any point. All it does at this point is slows everything down and costs a lot of money. This is not an esoteric argument. It's a boots on the ground argument. We have a lot of people in the very same position that Mr. Spann is in right now, and so if we were to do an independent mental exam on each and every one of them, we're going to be spending a lot of time and money that just quite simply is not necessary. Immediately after Mr. Spann was revoked, he goes right back into the system where he's getting great mental health care, he's getting drugs, he's getting counseling, and they are looking to try to find a way to release him again. That's the goal. The hardest part about this is state placement, and I guess as an aside, it's my frustration that we finally find somebody's state placement, and then they can't abide by the conditions because of their mental health. I don't disagree with a single word you said, but I'm just looking at the language of the statute. I'm trying to answer it. I guess I'm going to try to answer it a different way. As I read over all of these statutes again in preparation for this, I was looking at the due process prong under 4247D where it talks about a hearing, and in the due process, Mr. Spann clearly got an opportunity to testify, to present evidence, to subpoena witnesses, to confront and cross-examine witnesses who appear at the hearing. If you look at each and every one of these statutes when it says that a hearing must be conducted under 4247D, it refers back to those due process requirements, and in this case, Mr. Spann got them. Well, let me ask you this, Ms. Hyde. Didn't the district court make a finding that a danger would exist if Spann were released into the community without the conditions? Yes, he did, and that is because... So you don't disagree that the court should make such a finding, do you? No, no. I think that's part of what the district court met on. Because that's the second criteria under subsection F, that the release would create a substantial risk, and the judge found that. Do you think the judge has discretion in a given case about whether to call for an independent examination of mental health if the judge were so inclined? Yes, your honor, and in this case, both Judge Rush and Judge Harpool expressly noted that in their orders, because it's very... Anytime the judge wants to have an independent mental exam, he can order that. In this case, he did not find it necessary in order to find that Mr. Spann had not lived by his conditions of release and therefore had to be revoked. So certainly, absolutely, anytime a judge wants to ask for an independent mental exam, he can do that. Would Spann be free to put on his own evidence of mental health at the revocation hearing if he wanted to obtain an expert or conduct his own private exam? Would that be feasible? Or would he have to get permission from the court to be examined? How would that work? If you don't... I think in this particular case, after revocation hearing, Mr. Lurser asked the court to award him the opportunity to have an independent mental exam, and Judge Rush expressly denied that. It wasn't at a request for a court-funded exam? I believe it was. I'm asking if the committed person wanted to arrange his own exam and put on evidence of the results of that, would it be permissible? I'm going to have to tell you, Your Honor, I do not know the answer to that. Maybe Mr. Lurser does. I think one of the most interesting things about this is the independent mental exams are paid for by the U.S. Attorney's Office, not the Public Defender's Office. So I'm not sure if the public defender has a mechanism to pay for that, and I don't think it would be right to require Mr. Spann to pay for it himself. I thought the argument was made that he could have presented evidence on his own, but if that's the case, my question is, if present mental state is not relevant to a 42-46F proceeding, why would that be allowed? I think that's what Judge Rush and the jury said, that the person shall be afforded an opportunity to testify, which in this case Mr. Spann did. And if you look at the record of the hearing, he doesn't even know what drugs he's on. So he wasn't able to understand the importance of living up to the conditions, and so it would have been unnecessary, it would have slowed us down, and it would have cost a lot of money. But counsel, my question is this, if the only thing that matters is whether or not he violated his conditions, of what relevance is any other testimony? If his present mental state is not at issue. And I do not believe it is, and I do not believe it is in this case, but I don't think that would preclude a district court from ordering it if he or she wanted to hear that. Why would they order something that's not relevant to the statute? In the cases that I'm familiar with, it would never be necessary. I just don't want to imply that a district court couldn't order that if he or she wanted to. Well, I'm just saying that if present mental state is irrelevant as a matter of law to the statute, I don't know how they could if they so choose. And I doubt that we would appeal them on that point. But in the cases that I'm familiar with, and certainly in Mr. Spann's case, it's just absolutely not necessary. Mr. Spann was not mentally capable, he is still mentally ill, he's not capable of being released without having those very important conditions that have mental health professionals around him helping him take his medication correctly and do the things that he needs to do. So in this case, it certainly would never have been relevant to have an independent mental exam be ordered, and I don't think it's required by the statute. I don't believe that there's anything else that I need to add to this argument. I believe that the questions, we have addressed all the points that I intended to make, so I'd simply ask at this time that you affirm the decision of the district court. Very well, thank you for your argument. Mr. Mercer, we'll hear from you in rebuttal. Thank you, Judge. First, I wanted to address who has the burden of proof to establish conditional release. Judge Colton had asked that question. I don't know that the statute's clear. It just says when the director finds that certain criteria exist, the person can be released, so I don't want my answer to be interpreted as actual knowledge as to what the burden of proof is. I think it's unclear from the statute. Now, I think the most important questions that have been before the court today are what does the statutory language mean in 4246F when it talks about whether a person continued release makes them dangerous? I think Judge Grass's question is right to the mark. If we can stop at them violating the conditions, then the remainder of that statutory language is meaningless, and certainly that would violate canons of statutory interpretation. Judge Colton asked, well, doesn't noncompliance per se show dangerousness? I didn't ask that. I'm sorry. I misunderstood then. I guess what I was... Whether you think it does, but I don't remember asking that. Go ahead. I think the point I would want the court to take away is that noncompliance creates dangerousness only if the person remains presently mentally ill in such a way that noncompliance would create that dangerousness. I think it's a chicken and egg question, but ultimately it's inescapable that these kinds of... If I could finish my thought, please. Yes. Would you also address whether you put on any evidence to make any kind of prima facie showing that Spann had recovered? I'll address that first, Your Honor. No, I did not. Your position then really depends on a requirement to have a hearing in every case, which is what you said earlier, I believe. Why couldn't the judge address whether there's a substantial risk on a case-by-case basis and decide whether there's a need for a mental health exam on a case-by-case basis? I suppose that's an option. I don't know what would create that case-by-case basis. If it had just been examined last week, why would you need a new exam, for example? If the committed person doesn't put on any evidence prima facie showing a recovery, then query, maybe you don't need an exam. If the committed person puts on showing that he's recovered substantially, maybe that triggers some obligation to look at it more closely and do more examination. I don't know. Those are some thoughts, but please go ahead and give your views. To conclude my argument, Your Honor, I would say this, that if there's a that really would indeed be a way of shifting the burden of release to the defendant. What the government is doing is they are asking for a change in the status quo. The status quo is the person has been conditionally released. The government is now asking that that be revoked. The statute, in my opinion, is very clear that they must prove certain things to trigger that is presently suffering a mental illness that would make them dangerous if they were continued in their release. I believe that's all I have. Thank you. All right. Well, thank you very much for your argument. Thank you to both counsel for appearing. The case is submitted and the court will file an opinion in due course.